# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SCOTT JOHNSON,  :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant.  :

Case No. 3:07-cv-459

District Judge Thomas M. Rose
Chief Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

2

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on August 26, 2003, alleging disability from May 12, 2003, due to spinal stenosis and ankylosing spondylitis. (Tr. 61-63, 72). Plaintiff's application was denied initially and on reconsideration. (Tr. 43-46; 48-50). A hearing was held before Administrative Law Judge Melvin Padilla, (Tr. 457-478), who determined that Plaintiff is not disabled. (Tr. 17-36). The Appeals Counsel denied Plaintiff's request for review, (Tr. 6-9), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe depression, anxiety disorder, and mild lumbar spine disorder, (Tr. 21, ¶ 3), but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 27 ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a reduced

range of medium work, but that he must avoid climbing ladders, working at heights, or more than occasional stooping or crouching *Id.*, ¶ 5. Judge Padilla also found that Plaintiff is limited to simple tasks not involving extended periods of concentration and to low stress jobs with no dealing with the public, no production quotas, and no fast-paced work, or more than minimal contacts with coworkers and supervisors. *Id.* Judge Padilla found further that Plaintiff is unable to perform his past relevant work as a machinist. (Tr. 35, ¶ 6). Judge Padilla then used sections 203.28 through 203.31 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 35, ¶¶ 9, 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 36, ¶ 11).

Dr. Vosler is Plaintiff's primary care physician and the record contains a copy of his voluminous office notes dated July 14, 1998, through January 24, 2005. (Tr. 280-378). Dr. Vosler treated Plaintiff for back pain and prescribed medications, including narcotics and muscle relaxers, and he documented that his examinations showed tenderness to palpation in the lumbar spine, spasm, and decreased ranges of motion. *Id.* Beginning in October, 1999, Plaintiff complained of nerves, anxiety attacks, and depression. *Id.* Dr. Vosler's notes reveal that Plaintiff reported difficulty sleeping in 1998, 1999, August 2000, October 2001, and December 2001, and in July, 2001, Plaintiff reported feeling angry all the time. *Id.*

A March, 2001, CT scan of Plaintiff's lumbar spine showed an annulus disc bulging at L4-5 and L5-S1, associated hypertrophy of the ligamentum flavum that caused slight narrowing of the spinal canal at L4-5, "which is already congenitally narrowed to begin with," but no herniation or spinal stenosis. (Tr. 143).

4

On June 15, 2001, Plaintiff underwent a bone scan which revealed degenerative changes in the shoulders, knees, and ankles, but no specific abnormalities of the thoracic or lumbar spines. (Tr. 142).

Plaintiff consulted with Dr. Smith, a pain specialist, on June 8, 2001. (Tr. 144-48). At the time of his initial evaluation, Dr. Smith noted that Plaintiff had localized trigger points in the left erector spinae muscles at approximately L4-5, the left rhomboid muscles, and the left trapezius muscles, positive straight leg raising at less than 5 degrees with a suggestion that it was not positive from an anatomical cause, and that he had normal sensation. (Tr. 144-48). Dr. Smith identified Plaintiff's diagnoses as myofascial pain syndrome and lumbar disc bulge. *Id.* On June 28, Dr. Smith reported that Plaintiff's physical exam was remarkable for pain over the paravertebral muscles of the lumbar and thoracic region. *Id.* Dr. Smith recommended Plaintiff participate in physical therapy and receive trigger point injections. *Id.*

On December 31, 2001, Plaintiff began receiving treatment from Dr. Raymond Wolf, a family practitioner. (Tr. 151-57). Dr. Wolf reported that Plaintiff sat bent to the left side, walked with an antalgic gait, and that he had increased tension at rest in the lumbar paravertebral musculature with severe trigger points at L5 bilaterally with superficial and deep myofascial dysfunction. *Id.* A standing lumbar spine x-ray taken during this first visit revealed slightly increased spinal lordosis and documented a severe leg length discrepancy. Dr. Wolf prescribed a heel lift and Elavil. *Id.* Plaintiff continued to see Dr. Wolf through April 2002, with complaints of significant stiffness. *Id.* A January, 2002, HLA B27 test to rule out ankylosing spondylitis was positive. *Id.* Dr. Wolf continued treating Plaintiff with trigger point injections, therapy, and osteopathic manipulation. *Id.*

5

Plaintiff consulted with rheumatologist Dr. Sanford Wolfe on June 13, 2002. (Tr. 158-59). Dr. Wolfe noted that Plaintiff had some palpable tenderness over the SI joints, some muscle tightness in the perio-lumbar muscles, reduced forward flexion of the lumbar spine, and normal lateral lumbar movement. *Id.* Dr. Wolfe also noted that Plaintiff's symptoms were more compatible with spinal stenosis than ankylosing spondylitis, since radiographic studies did not confirm any findings and the HLAB27 marker was not a definitive test for the disease. *Id.* Dr. Wolfe reported that Plaintiff might have more of a functional lumbar stenosis that is causing some of the problems as well as muscular pain. *Id.* Dr. Wolfe recommended epidural blocks and also recommended adding Skelaxin and Vicodin to Plaintiff's medication regime. *Id.*

A July 20, 2002, MRI of Plaintiff's lumbar spine was negative. (Tr. 160).

Plaintiff saw Dr. Vosler on June 27, 2002, because Plaintiff's employer wanted him seen "due to stress" and because his Celexa was no longer helping. (Tr. 343). Dr. Vosler arranged for an appointment with a psychiatrist and prescribed Prozac and Xanax. *Id.* The following month, Plaintiff reported that his medications were "helping a lot." (Tr. 338).

Plaintiff consulted with psychiatrist Dr. Birdi on August 16, 2002, and September 13, 2002. (Tr. 161-66). At the time of Plaintiff's initial evaluation, Dr. Birdi reported that Plaintiff complained of problems with impulse control and getting angry easily. *Id.* Dr. Birdi also reported that Plaintiff was easily distracted, his mood was irritable, his affect was full, appropriate, and normal, and that he was alert and oriented. *Id.* Dr. Birdi noted that Plaintiff's psychomotor activity was normal, his thought process was logical and goal directed, and that his insight was good. *Id.* On September 13, 2002, Dr. Birdi reported that Plaintiff was alert and oriented, had normal psychomotor activity, an irritable mood, and that his affect was appropriate but constricted and

6

blunted. *Id.*

Plaintiff consulted with rheumatologist, Dr. Madan, in November, 2002. (Tr. 167-69). Dr. Madan noted that Plaintiff reported he continued to have pain in his lower back, that he was now having pain in his shoulders and upper back, had morning stiffness that lasted for several hours, epidural injections provided only temporary relief, and exercises increased his symptoms. *Id.* Dr. Madan also noted that Plaintiff had a decreased range of spinal motion, but no localized tenderness in the spine and that he had 16 out of 18 exquisitely tender points. *Id.* Dr. Madan identified Plaintiff's diagnoses as chronic low back pain, chronic pain syndrome, severe depression, and insomnia. *Id.* Dr. Madan recommended a graded cardiovascular exercise program. *Id.*

November 14, 2002, x-rays of Plaintiff's bilateral sacroiliac joints were normal. (Tr. 170).

On January 3, 2003, Plaintiff consulted with Dr. Sharba, a neurologist. (Tr. 171-74). Dr. Sharba reported that Plaintiff's neurological examination revealed normal muscle bulk and tone in all major muscle groups, 5/5 (normal) strength throughout, intact sensation, and normal reflexes. *Id.* Dr. Sharba also reported that most of Plaintiff's pain was musculoskeletal and that he did not find a significant clinical presentation of muscle disease. *Id.*

A January 4, 2003 MRI of Plaintiff's cervical spine showed some minor early degenerative findings. (Tr. 182). An MRI of Plaintiff's dorsal spine performed on January 4, 2003, was within normal limits. (Tr. 185).

A January 20, 2003, EMG of Plaintiff's right lower extremity was within normal limits with no electrodiagnostic evidence of neuropathy or lumbosacral radiculopathy. (Tr. 175-76).

A January 25, 2003, MRI of Plaintiff's lumbar spine revealed a mild disc bulge at L4-

5 resulting in mild spinal canal narrowing and mild bilateral neuroforaminal narrowing, and a mild dextroscoliosis (rotation) at the mid-lumbar spine. (Tr. 186).

Plaintiff consulted with neurosurgeon Dr. West on February 24, 2003, at which time Dr. West noted that Plaintiff had palpable tenderness throughout the lumbar musculature, limited ranges of lumbar spine motion, and positive straight leg raising at 45 degrees on the left causing low back pain and at 30 degrees on the right causing low back pain. ( Tr. 188-89). Dr. West also noted that Plaintiff was able to stand on his heels and toes, had 2/4 and equal reflexes, good muscle function, and no sensory deficit. *Id.* Dr. West identified Plaintiff's diagnosis as a disc bulge at L4-5, and he noted that he did not see any obvious surgical defect. *Id.*

On March 11, 2003, Plaintiff consulted with Dr. Kraus, a neurologist. (Tr. 190). Dr. Kraus reported that Plaintiff had a positive straight leg raising test on the right with some pain radiating from his buttock to his thigh and tenderness in the sacroiliac joint on the right. *Id.* Dr. Kraus also reported that Plaintiff had equal strength and 1/4 reflexes bilaterally. *Id.* Dr. Kraus noted that most recent MRI of Plaintiff's lumbar spine confirmed a disc bulge at L4-5 and L5-S1 with some narrowing at several levels. *Id.* Dr. Kraus opined that most of Plaintiff's pain was in the sacroiliac joint, that Plaintiff had no findings that would "warrant this pain", and he recommended that Plaintiff "continue conservative measures" including epidural blocks. *Id.*

Plaintiff was hospitalized on July 31, 2003, with the diagnoses of major depression, severe with anxiety, and rule out bipolar mood disorder. (Tr. 206-15). At the time of his admission, it was noted that Plaintiff reported severe depression and an increase in anxiety, irritability, and anger and feeling "he would be better off dead" *Id.* It was also noted that previous to his admission, Plaintiff had not been sleeping or eating and lost 18 pounds in three weeks. *Id.* It was further noted

that Plaintiff had a 5-year history of treatment for depression with multiple psychotropic drugs, was taking Zoloft, and that he saw a therapist for a few sessions but stopped because he felt he did not need therapy. *Id.* Dr. Birdi, noted that at the time of his admission, Plaintiff presented as severely depressed and easily tearful, he was reluctant to self-disclose fully, he attempted to mask his depression and tears by holding them back, his responses were quick, clipped and brief, he was avoidant and evasive in eye contact, and he appeared to be extremely anxious with sweaty palms and constant movement of his leg. *Id.* Dr. Birdi assigned Plaintiff a GAF of 30. *Id.*

Examining psychologist, Dr. McIntosh reported on March 17, 2004, that although Plaintiff claimed he left his last job due to back problems, he also said he was fighting with his former employer over his termination, that Plaintiff claimed his older brother had sexually abused him for several years while he was growing, that he stopped drinking alcohol 12 years earlier, and that he stopped abusing cocaine in 1995, when he was hospitalized. (Tr. 239-43). Dr. McIntosh also reported that Plaintiff exhibited no posture, gait, or movement difficulties, that he engaged in a range of household activities, including caring for, dropping off, and picking up his children from school, reading, helping around the house when he was able, cooking most of the time, and walking about two miles a day for exercise. *Id.* Dr. McIntosh noted that Plaintiff maintained a composed and appropriate affect during the evaluation, did not cry nor appear to be near tears, and that his overall mood was mildly depressed. *Id.* Dr. McIntosh also noted that Plaintiff did not display any overt signs of anxiety, was oriented and alert, had no periods of mental confusion, and was neither preoccupied or obsessed. *Id.* Dr. McIntosh identified Plaintiff's diagnoses as post-traumatic stress disorder and dysthymic disorder, early onset and moderate and he assigned Plaintiff a GAF of 54. *Id.* Dr. McIntosh opined that Plaintiff's ability to understand, remember, and carry out one or two-

9

step instructions was only mildly impaired, as was his ability to concentre for these tasks, his ability to interact with supervisors and co-workers was moderately limited due to his social fearfulness, and that Plaintiff's ability to withstand the stress and pressure of day-to-day work activity was severely limited by his emotional problems. *Id.*

Dr. Vosler referred Plaintiff to a psychiatrist, Dr. Balster, who reported on June 17, 2004, that Plaintiff had admitted himself in 1995 for detox, that he had remained clean and sober since that treatment, and that he was hospitalized in 2003, after disclosing to his wife that he had been sexually abused as a child. (Tr. 419-421). Dr. Balster also reported that Plaintiff appeared well groomed and casually dressed, his mood was depressed, his affect was anxious, he was preoccupied with worries about his family's safety and flashbacks from being sexually abused, his memory was intact, and his judgment and insight were fair. *Id.* Dr. Balster identified Plaintiff's diagnoses as post-traumatic stress disorder and he assigned Plaintiff a GAF of 50. *Id.* Dr. Balster recommended therapy and Plaintiff treated with Dr. Balster about once every one to three months through at least the date of the hearing. (Tr. 408-18; 440-42; 448-49).

On June 21, 2005, Dr. Balster reported by way of responses to interrogatories that Plaintiff's diagnoses were post-traumatic stress disorder, depression, and attention deficit, that Plaintiff was not able to perform most work-related mental activities, and that he had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies in concentration, persistence, or pace. (Tr. 389-98). Dr. Balster noted that some of Plaintiff's functioning, such as his ability to concentrate, had improved with treatment, but that Plaintiff would be unable to sustain attention and concentration on work to meet normal standards of work productivity and work accuracy. *Id.* Dr. Balster noted further that Plaintiff did not trust

10

others to work in coordination with them and that he was very sensitive to criticism. *Id.*

Examining physician, Dr. Duritsch reported in February 2006, that Plaintiff complained of back pain, leg pain and weakness for the past 3-4 years, that medication helped his pain, and that he was able to occasionally do yard and housework. (Tr. 399-408). Dr. Duritsch also reported that Plaintiff's most recent lumbar spine x-rays were normal. *Id.* Dr. Duritsch noted that Plaintiff had decreased ranges of motion in the lumbar spine and that Plaintiff displayed a great deal of chronic pain behavior with grimacing and accentuation of symptoms. *Id.* Dr. Duritsch also noted that there were no objective findings on his examination and that without objective findings, Social Security's guidelines were clear that there could be no limitations on Plaintiff's ability to perform work. *Id.*

On January 16, 2006, Dr. Vosler reported by way of answers to interrogatories that due to pain from ankylosing spondylitis, Plaintiff would be unable to sustain most of the mental demands of work on a regular and continuing basis, that he had marked limitation with daily activity and social functioning, and extreme limitation with concentration, persistence or pace. (Tr. 422-31). Dr. Vosler also reported that Plaintiff was "very depressed about his disabling condition" and that this resulted in Plaintiff suffering from a loss of hope that would make his pain "subjectively worse." *Id.*

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by failing to give the proper evidentiary weight to the opinions of his treating psychiatrist Dr. Balster and his treating physician Dr. Vosler that he is not able to perform most of the mental demands of work and by failing to find that he is disabled by pain. (Doc. 9).

In general, the opinions of treating physicians are entitled to controlling weight.

*Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion.

12

*See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Plaintiff argues in support of his first Error that the Commissioner erred by rejecting Dr. Vosler's and Dr. Balster's opinions that he is not capable of performing most of the mental requirements of work..

In rejecting Dr. Vosler's opinion, Judge Padilla noted that Dr. Vosler is not a mental health expert, that his office notes do not reflect any details of Plaintiff's alleged mental impairment, and that he identified the reason for Plaintiff's mental incapacity as "ankylosing spondylitis" as opposed to a mental impairment. (Tr. 30).

As noted above, Dr. Vosler has been Plaintiff's long-term primary care physician. It is true, therefore, that Dr. Vosler is not a mental health care provider. Of course, Dr. Vosler's area of expertise is a factor the Commissioner may properly consider in determining the evidentiary weight to give to an opinion. *See* 20 C.F.R. § 404.1527(d)(5). In addition, a review of Dr. Vosler's contemporaneous office notes reveals that although he prescribed mental health-related medications over the years, those notes reflect only recitations of Plaintiff's subjective complaints and no objective clinical findings particularly any related to Plaintiff's alleged mental impairment. *See, e.g.,* Tr. 280-378. Further, Dr. Vosler based his opinion on a diagnosis which he identified as

13

ankylosing spondylitis which is not, as Judge Padilla determined, a non-exertional mental impairment but rather an exertional physical impairment.

In rejecting Dr. Balster's opinion as to Plaintiff's limitation, Judge Padilla first noted that the record suggested that Dr. Balster did not have significant knowledge of Plaintiff's daily functioning. (Tr. 31). Specifically, Judge Padilla noted that Dr. Balster's office notes were minimal and often unsigned and that it appeared that Dr. Balster was not the person who actually saw Plaintiff. *Id.* Judge Padilla also determined that the office notes submitted under Dr. Balster's name essentially reflected Plaintiff's subjective complaints and allegations. *Id.*

A review of Dr. Balster's office notes indeed reveals that they essentially contain recitations of Plaintiff's subjective complaints and few, if any, objective clinical findings. *See, e.g.,* Tr. 410-21; 440-42. In addition, several of the clinical notes were apparently written by someone other than Dr. Balster who signed those notes. *See, e.g.,* Tr. 410, 418, 440; 441. Further, Dr. Balster's office notes indicate that while Plaintiff initially received treatment about every two to three weeks, he eventually saw a mental health care provider only every two to three months. *See, e.g.,* Tr. 410, 417, 418, 440.

Both Dr. Vosler's and Dr. Balster's opinions are inconsistent with other evidence in the record. For example, Dr. McIntosh reported that Plaintiff was alert and oriented, had no periods of mental confusion, displayed no overt signs of anxiety, and was, at worst, mildly depressed. In addition, Dr. McIntosh assigned Plaintiff a GAF of 54 reflecting, at worst, a moderate impairment. Drs. Vosler's and Balster's opinions are also inconsistent with the reviewing psychologists' opinions. *See* Tr. 245-60; 66. Finally, Drs. Vosler's and Balster's opinions are inconsistent with Plaintiff's reported range of activities which include caring for his children, cooking most of the

14

time, walking every day for exercise, performing household chores, driving, visiting others, attending church, attending his children's athletic events, and apparently fishing and hunting. *See, e.g.,* Tr. 242, 399, 410, 420, 434.

Under these facts, the Commissioner did not err by rejecting Dr. Vosler's or Dr. Balster's opinions that Plaintiff is not capable of performing work-related mental activities.

Plaintiff argues next that the Commissioner erred by failing to find that he is disabled by pain.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

The measure of an individual's pain cannot be easily reduced to a matter of neat calculations. *Jones, supra*. There are no x-rays that can be taken that would objectively show the precise level of agony that an individual is experiencing. *Id.* Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork. *Id.* The Commissioner's own guidelines acknowledge the most inexact nature of this evaluation:

> Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity. Whenever available this type of objective medical evidence must be obtained and must be considered in reaching a conclusion as to whether the individual is under a disability.

*Jones,* 945 F.2d at 1369-70, *quoting* S.S.R. 88-13.

As noted above, Judge Padilla determined that Plaintiff has a severe lumbar spine disorder. However, Judge Padilla also determined that Plaintiff's subjective complaints and allegations are not supported by the medical evidence of record. (Tr. 33-34). This Court cannot say that the Commissioner erred in this regard.

First, Dr. Smith reported that which Plaintiff had trigger points and pain over the paravertebral muscles, his physical examination of Plaintiff suggested that some of his complaints were not from an anatomical cause. Dr. Wolfe reported that Plaintiff had, at worst, some muscle tightness and that radiographic studies did not confirm any findings. Dr. Madan noted that while Plaintiff had trigger points and a decreased range of spinal motion, he had no localized tenderness. Dr. Sharba reported an entirely normal neurological examination as did Dr. West. Additionally, Dr. Kraus opined that Plaintiff had no findings that would "warrant this pain" and Dr. Duritsch reported that there were no objective findings on his examination of Plaintiff and that Plaintiff's x-rays were

16

normal. Finally, in addition to the normal x-rays noted by Drs. Wolfe and Duritsch, the MRI and CT reports in the record reflected, at worst, slight or minor findings and, indeed, some were negative as was the report of the EMG.

Under these facts, the Commissioner did not err by failing to find that Plaintiff is not disabled by his alleged pain.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

November 10, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).